# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | NO. 09-CR-512-2 |
| | : | |
| HAZIZ SELF | : | |

**Diamond, J.**                                                                            **July 28, 2010**

## MEMORANDUM

After the jury in this drug prosecution convicted Defendant Haziz Self, an alternate juror – who did not deliberate – suggested that several regular jurors had told her that they voted guilty even though they did not necessarily agree with that verdict. Defendant now seeks permission under Local Criminal Rule 24.1(c) to interview the alternate juror. For the following reasons, I will deny Defendant's request.

**I.    BACKGROUND**

    **A.    Trial**

On July 29, 2009, the grand jury charged Haziz Self and his brother Rahmmar Self with distribution of five grams or more of cocaine base and distribution of cocaine base within 1,000 feet of a public housing facility. See 21 U.S.C. § 841(a)(1); 21 U.S.C. § 860(a); *Doc. No. 1*. Those charges stemmed from the same March 4, 2009 events.

On September 9, 2009, the grand jury returned a superseding indictment, charging Rahmmar Self with two additional counts of distribution of crack cocaine, two additional counts of distribution of cocaine base within 1,000 feet of a public housing facility, and one count of possession of a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c)(1); *Doc. No. 27.* The five new counts stemmed from events that occurred at the same public housing

facility on July 27 and August 4, 2009. *(Id.)* On May 17, 2010, Rahmmar Self pled guilty to all seven charges. *(Doc. No. 111.)*

Defendant's trial began on June 22, 2010 with the selection of twelve regular jurors and two alternates. The evidence against Defendant was overwhelming, including video and audio recordings of the March 4th events, the testimony of eyewitness law enforcement officers, and testimony from the individual who purchased the crack cocaine from Defendant.

At 1:20 p.m. on June 24th, having completed my final jury instructions, I separated the two alternates from the twelve regular jurors who then began their deliberations. The alternates thus were not present in the jury room and did not either witness or participate in the deliberations. Approximately two hours later, the foreman told my Courtroom Deputy that the jury had reached a verdict. At 3:33 p.m., the foreman announced the jury's unanimous verdict: guilty as to both counts. I then polled the jurors, each of whom confirmed his or her agreement with the verdict as announced.

**B.    The Alternate Juror's Allegations**

Some minutes after the courtroom had emptied, the Second Alternate Juror approached my Deputy and said that "several" of the regular jurors had told her that they went along with the verdict even though they did not necessarily agree with it. My Deputy asked the Alternate to write down her name and telephone number, along with the names of the "several" jurors. The Deputy placed the writing in a sealed envelope and then gave the envelope to me. After her own name and phone number, the Alternate had written the name of only one regular juror.

The next day – June 25, 2010 – I conducted an on-the-record telephone conference, informed counsel of the Alternate's allegations, and provided each lawyer with a copy of the Alternate's writing. *(Doc. Nos. 140, 141.)* Defense counsel "request[ed that] there be some

2

notification to the twelve jurors that reached the verdict that they be, pursuant to [Fed. R. Evid.] 606(b), that there be some inquiry by the Court." *(Doc. No. 140, Tr. at 3.)* I indicated that although the Third Circuit's rulings in this area made it extremely unlikely that Defendant was entitled to such a wide-ranging "inquiry," counsel was free to seek the relief he believed was appropriate. *(Id. at 4-5.)* See United States v. Stansfield, 101 F.3d 909 (3d Cir. 1996).

In fact, on July 13, 2010, Defendant considerably narrowed his request, moving to interview the Second Alternate Juror pursuant to Local Criminal Rule 24.1(c). *(Doc. No. 142.)* Defendant argues that "the statements made by the sitting juror(s) to the alternate juror pertain directly to whether the sitting jurors complied with their oath and responsibility in deliberations prior to rendering a verdict." *(Id. at 1.)* The Government opposes Defendant's request. *(Doc. No. 146.)*

## II. LEGAL STANDARDS

Defendant's request implicates two closely related questions: (1) when post-trial juror interviews may be allowed; and (2) when juror testimony may be used to impeach a verdict. These questions, in turn, implicate two closely related provisions: Local Criminal Rule 24.1 and Federal Rule of Evidence 606(b).

Entitled "Contact with Jurors," Rule 24.1(c) provides in pertinent part:

> After the conclusion of a trial, no attorney, party or witness shall communicate with or cause another to communicate with any member of the jury without first receiving permission of the Court.

The Rule became effective on January 1, 1998. It provides no enforcement standard or commentary, nor are there any reported decisions from this District or the Third Circuit in which the Rule has been applied or interpreted. Judge Weinstein has explained, however, that the concerns underlying Rule 24.1 are entwined with those underlying Rule 606(b). See Weinstein's

3

Federal Evidence, Competency of Juror as Witness, § 606.06 (2010) (Rule 606(b)'s rationale has led "many courts to adopt local rules preventing the parties and their counsel from contacting jurors after the conclusion of the trial without first obtaining the court's permission"); see also Weissenberger's Federal Evidence, § 606.4 (2009) ("a great number of federal district courts have now adopted local rules requiring court approval before trial lawyers may engage in or initiate post-trial contact with jurors for any reason," and many of these courts require a threshold showing that "the tendered evidence is admissible under 606(b)").

Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.
>
> But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

Fed. R. Evid. 606(b).

Rules 606(b) and 24.1 are of a piece: in setting out the extremely limited circumstances in which a juror may testify about deliberations, Rule 606(b) necessarily informs the District Court's discretion under Rule 24.1(c) as to when it should allow post-trial juror interviews respecting deliberations.

## III. DISCUSSION

The Government opposes Defendant's request to interview the Second Alternate:

> The alternate juror did not participate in deliberations and, more importantly, no evidence of any statement by a juror concerning the jury's deliberation could be received in evidence. See Fed. R. Evid. 606(b). Thus, no legitimate purpose possibly could be served by an interview of the alternate juror.

*(Doc. No. 146 at 1.)* I agree.

Courts have long disfavored post-trial inquiries into jury deliberations because they undermine the "finality of the [trial] process." Tanner v. United States, 483 U.S. 107, 120 (1987); see also Weinstein's Federal Evidence, Competency of Juror as Witness, § 606.06 ("federal courts are notoriously reluctant to permit either informal post-verdict interviews with or testimony from discharged jurors," as "the values of stability and finality of the verdict and the guarding of jurors against vacillation and tampering might be undermined if counsel were free to hound jurors after each verdict in the hope of unearthing proper conduct"). Accordingly, even before the adoption of provisions like Rule 24.1, Courts were loath to allow juror questioning after trial:

> The rules relating to post-trial interviewing of jurors are less well-developed than the rules relating to the admission of juror testimony in order to impeach a verdict. . . . Thus, supervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b).

United States v. Moten, 582 F.2d 654, 665 (2d Cir. 1978). See United States v. Aimone, 715 F.2d 822, 830 (3d Cir. 1983) ("We reject as well the defendants' contention that there should be a post-trial interrogation of the jurors . . . . In these circumstances, that would constitute an unwarranted intrusion into the jury deliberations.") (citing Fed. R. Evid. 606(b)); Sixberry v. Buster, 88 F.R.D. 561, 561-62 (E.D. Pa. 1980) ("It is well settled that the Federal courts strongly disfavor any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset, and harass them.") (internal citations omitted); see also CPR Assoc.

5

v. S.E. Penna. Chapter of the Am. Heart Assoc., No. 90-3758, 1990 U.S. Dist. LEXIS 17110, at *2 (E.D. Pa. Dec. 18, 1990).

The restrictions on post-trial juror questioning are a function of the long-standing prohibition against impeaching verdicts with juror testimony concerning deliberations. In United States v. Stansfield, the Third Circuit observed that Rule 606(b) codified "a common-law rule of ancient vintage that a jury's verdict may not be impeached by the testimony of a juror concerning any influences on the jury's deliberations that emanated from within the jury room," and that "testimony concerning intimidation or harassment of one juror by another falls squarely within the core prohibition of the Rule." 101 F.3d at 913-914 (citing Tanner, 483 U.S. at 120). Other Circuits have similarly held that in limiting the use of juror testimony to impeach a verdict, Rule 606(b) necessarily limits post-trial juror questioning. See United States v. Logan, 250 F.3d 350, 381 (6th Cir. 2001) ("Because Rule 606(b) prohibits post-verdict interrogation of jurors as to internal influences, the district court did not err in denying Appellants' motion for permission to interview the jurors."); United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988) (Rule "606(b) . . . prohibit[s] the interrogation of jurors except with regard to whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror"); Big John, B.V. v. Indian Head Grain Co., 718 F.2d 143, 150 (5th Cir. 1983) ("The motion to interview jurors. . . was merely, as Indian Head admitted, a 'fishing expedition' in the hope of impeaching the verdict.").

This wealth of authority compels me to deny Defendant's request. Liberally construed, the Second Alternate's allegations regarding "several" jurors – although she identified only one – suggest that during deliberations, other jurors may have persuaded the "several" to vote to convict. Assuming this is true, it is precisely the kind of "influence[] on the jury's deliberations

6

that emanated from within the jury room" insulated from post-trial inquiry by Rules 24.1 and 606(b). See Stansfield, 101 F.3d at 916 (an inquiry into "intimidation that the jurors claim they felt during deliberations . . . is no different than attacking the verdict directly. Rule 606(b) forbids this"); see also Aimone, 715 F.2d at 830 (citing Fed. R. Evid. 606(b)).

In the instant case, where the jury deliberated for only two hours, it appears that significant persuasion from within the jury room was not needed to reach unanimity. In any event, under Rule 606(b), such persuasion, emanating entirely from within the jury room, cannot impugn the jury's verdict. Granting Defendant's request would thus be pointless.

## IV. CONCLUSION

For these reasons, Defendant's request to interview the Second Alternate Juror is denied. An appropriate Order follows.

**BY THE COURT**.

*/s/ Paul S. Diamond*

_____

**Paul S. Diamond, J.**